UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID JOINER<br>    Plaintiff,<br><br>v.<br><br>CHARTWELLS and<br>COMPASS GROUP NORTH<br>AMERICA,<br>    Defendants. | :<br>:<br>:   CIVIL ACTION NO.<br>:   3-05-cv-845 (JCH)<br>:<br>:<br>:<br>:   May 3, 2007<br>: |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 70)
AND DEFENDANTS' MOTION TO STRIKE (Doc. No. 124)**

The plaintiff, David Joiner, has brought this action pursuant to 42 U.S.C. §§ 2000e et seq. ("Title VII"), alleging race discrimination and retaliation against the defendants, Chartwells and Compass Group North America (collectively, "Chartwells"). This court properly has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 1331 and 1367.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Chartwells has moved for summary judgment (Doc. No. 70). Chartwells has also moved to strike certain paragraphs of Joiner's Local Rule 56(a)(2) statement and Joiner's Declaration submitted in support of his opposition to summary judgment (Doc. No. 124). For the reasons that follow, Chartwells' motion for summary judgment is GRANTED in part and DENIED in part. Chartwells' motion to strike is DENIED.

## II. STANDARD OF REVIEW

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III. BACKGROUND

Joiner is an African-American male who was employed by Chartwells from April 2002 until March 11, 2005. Chartwells is a division of a food service business known as Compass Group. Chartwells has operated the food services at Trinity College ("Trinity"), which is located in Hartford, Connecticut, since July 2001. Chartwells' food service employees at Trinity are represented by the Local 217 Hotel Employees and Restaurant Employees Union (the "Union"). A collective bargaining agreement (the "CBA") between Chartwells and the Union governs Chartwells' food service employees at Trinity.

2

Chartwells hired Joiner on April 22, 2002 to work in the food service operation at Trinity College. Joiner worked as a full-time Banquet Captain in the Catering division. Joiner was the only African-American Banquet Captain at Chartwells. As a Banquet Captain, Joiner's responsibilities included gathering all necessary equipment for a Catering event, setting up the event room, and directing the duties of any banquet servers assisting him during the event. By virtue of being a Banquet Captain, Joiner, along with other Banquet Captains, had priority in receiving available work at banquet functions. Chartwells offered Banquet Captains their choice of schedule based upon ability and seniority. The CBA defines "seniority" for Union food services employees at Trinity as "the length of continuous service in the food service department at Trinity College." Def. Local Rule 56(a)(1) Stat. at ¶ 25[1] (citing CBA, Art. 12.1).

Beginning in August 2002 and continuing through the end of his employment, Joiner regularly filed grievances against his managers at Chartwells. Joiner based a number of these grievances on his belief that his assigned hours as a Banquet Captain were diminishing because his managers were improperly assigning hours to other Banquet Captains. E.g., Pl. L.R. 56(a)(2) Stat., Disputed Issues of Fact at ¶ 3. Beginning in September 2002, Chartwells issued approximately twelve Disciplinary Actions against Joiner, ostensibly related to Joiner's work performance. These disciplinary actions ranged from documented verbal warnings to suspension pending termination. Def. L.R. 56(a)(1) Stat. at ¶ 42. Joiner grieved every discipline he ever received from Chartwells at Trinity. On a number of occasions after Joiner grieved one

---

[1]Hereinafter, the parties' Local Rule 56 statements will be cited as "L.R. 56(a)(_) Stat. at ¶ __."

of his disciplines, Chartwells either removed the discipline or agreed to a lesser punishment. Def. L.R. 56(a)(1) Stat. at ¶ 66, Pl. L.R. 56(a)(2) Stat. at ¶ 66.

In February of 2003, Chartwells terminated Joiner for allegedly exhibiting threatening behavior towards a co-worker during an on-the-job altercation. See Def. L.R. 56(a)(1) Stat. at ¶ 48. Joiner was reinstated in March 2003 after a successful grievance. Later in March 2003, Joiner brought a charge of discrimination against Chartwells to the Connecticut Commission on Human Rights and Opportunities (the "CHRO"). Joiner alleged that Chartwells and its managers discriminated against him on the basis of race by reducing his hours and unfairly disciplining him. Joiner amended this complaint on August 13, 2004 in order to allege further incidents of racial discrimination by Chartwells. Pl. L.R. 56(a)(2) Stat., Disputed Issues at ¶ 42-A.

On March 1, 2005, Chartwells issued Joiner a notice of suspension pending a decision to terminate his employment. This discipline stemmed from Chartwells' finding that, on February 19, 2005, Joiner gave away free beer at a Trinity student event to a female Trinity student in exchange for kisses and the female's phone number. Def. L.R. 56(a)(1) Stat. at ¶ 54. Joiner claims that he never gave away beer to this female or anyone else at the event. Pl. L.R. 56(a)(2) Stat, Disputed Issues at ¶ 53. Chartwells terminated Joiner's employment on March 11, 2005.

### III. DISCUSSION

#### A. Joiner's Race Discrimination Claim

##### 1. The McDonnell Douglas Analysis

Analyzing whether the defendants subjected Joiner to intentional discrimination

4

must be done under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 356 (2d Cir. 2001). The plaintiff is first required to establish a prima facie case of discrimination. <u>See</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). A prima facie case for disparate treatment is established by showing that: 1) the plaintiff is a member of a protected class; 2) the plaintiff was qualified for his job; 3) the plaintiff suffered an adverse employment action; and 4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>see also</u> <u>Burdine</u>, 450 U.S. at 254.

Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. <u>See</u> <u>id.</u> Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination drops out. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11 (1993). The burden then shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him in the employment action. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143, (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. <u>Id.</u>

A prima facie case combined with a showing that an employer's asserted justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. <u>Schnabel v. Abramson</u>, 232 F.3d 83, 89-91 (2d Cir.

200) (citing Reeves, 530 U.S. at 142). The court must "examin[e] the entire record to determine whether the plaintiff could satisfy her 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143, 120 S.Ct. 2097). The plaintiff need not show that race was the only factor motivating any adverse employment actions he suffered in order to make a showing of employment discrimination. See 42 U.S.C. § 2000e-2(m); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive. Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir.1997).

2. Issues in Dispute

On the first prong of the McDonnell Douglas test, there is no dispute that Joiner is a member of a protected class. On the third prong, Chartwells does not dispute that Joiner's termination constitutes an adverse employment action. However, Joiner also claims that he suffered an adverse employment action when Chartwells reduced Joiner's work hours over the course of his employment. Pl. Mem. in Opp. at 5-6. Though Chartwells does not explicitly concede that Joiner's reduction in hours is an adverse employment action, it offers no substantive challenge to Joiner's assertion.

The dispute between the parties, then, concerns the second and fourth prongs of the McDonnell Douglas analysis, namely, whether Joiner was qualified for his job and whether the adverse employment actions occurred under circumstances giving rise to

6

an inference of discrimination. Because the court finds that, even assuming that Joiner was qualified to perform his job,[2] he has failed to put forward evidence creating a material issue of fact on the ultimate issue of race-based discrimination, the court grants summary judgment on Joiner's racial discrimination claim.

3. Inference of Discrimination

Joiner argues that, because of his race, Chartwells' management systematically singled him out with respect to the assignment of work hours to Banquet Captains. Joiner further contends that his March 2005 termination was the direct result of Chartwells' pattern of racially discriminatory conduct toward him. To understand Joiner's contentions, one must appreciate the parties' dispute over the meaning of the word "seniority," as that term is used in the CBA.

According to Joiner, "seniority" at Chartwells, with regard to scheduling of hours for Banquet Captains, should have been based on an employee's length of service as a Banquet Captain. Pl. L.R. 56(a)(2) Stat. at ¶ 77; Def. L.R. 56(a)(1) Stat. at ¶ 77. Chartwells, on the other hand, interpreted "seniority" as based on an employee's total length of service as a food service employee at Trinity, not with respect to any particular employment classification. Def. L.R. 56(a)(1) Stat. at ¶ 26.

After Joiner complained about Chartwells' interpretation of seniority, Joiner claims that Chartwells' management retaliated against him. Edward Taraskewich, one

---

[2] While the court does not express an opinion on the ultimate issue of whether Joiner was qualified for his job, it does note that, subsequent to this court's 1996 decision in Evans v. Connecticut, 935 F.Supp. 145 (D.Conn. 1996) (Motley, J.), the Second Circuit clarified that a Title VII plaintiff must show "satisfactory job performance" by meeting "the employer's honestly-held expectations." Thornley v. Penton Publishing, Inc., 104 F.3d 26, 30 (2d Cir. 1997) (analyzing Evans).

7

of Joiner's managers, demanded that all communication regarding Joiner's employment and work assignments go through him.  Joiner asserts that Chartwells then disciplined him for job performance issues that management ignored in other employees.  Joiner supports this contention with a cite to an October 21, 2002 grievance that he filed with the assistance of his Union steward, Al Rice.  See Pl. Mem. at 8 (citing Pl. 56(a)(2) Stat., Disputed Facts at ¶¶ 11, 12).  This grievance is void of any evidence concerning management's treatment of other employees.  See id.  Because the record does not support Joiner's allegations of racially discriminatory discipline, the court does not credit them.[3]

The crux of Joiner's racial discrimination claim is Chartwells' alleged misrepresentations to Joiner concerning the staffing of Banquet Captain positions during the summer and fall of 2003.  Pl. Mem. in Opp. at 9.  Under the CBA, Chartwells is required to employ at least four Banquet Captains; however, Chartwells may hire more than four Banquet Captains if it so chooses.  Def. L.R. 56(a)(1) Stat. at ¶ 39.  When Chartwells decided to create an additional Banquet Captain position, the CBA required it to post the opening for at least fifteen days.  Id. at ¶ 29.  The position was then "filled promptly by the employee with the most seniority, provided she/he [was] qualified to perform the work."  Pl. L.R. 56(a)(2) Stat. at ¶ 29.

---

[3]Joiner's Supplemental Declaration (Doc. No. 131-2) cites a number of minor offenses for which he was disciplined, one instance where he observed Castro receiving progressive counseling for a violation, and one instance where Castro successfully requested the removal of disciplinary action for a minor infraction.  See Joiner Dec. at ¶ 9(a)-(f).  Thus, it appears that, when Joiner refers to Chartwells punishing Joiner for minor infractions that it ignored when similar actions were committed by "other Banquet Captains," Joiner is really just referring to Castro.  See id.  To the extent that Joiner attempts to compare himself with Castro, Joiner has not shown that he was similarly situated to Castro during the relevant period.  Ruling, *infra*, at 10.

In August 2003, Chartwells employed four Banquet Captains. It then created a fifth Banquet Captain position by transferring Gloria Aponte from Banquet Server to Banquet Captain. Joiner admits that Chartwells intended to create a fifth Banquet Captain position for him in November 2002, when Chartwells reinstated Joiner as a Banquet Captain after a September 2002 demotion. Pl. Mem. in Opp. at 10. Still, Joiner attempts to suggest that hiring Aponte to fill the fifth banquet position was improper. See id. at 9. Joiner asserts that Chartwells' management assured him that Aponte would return to her prior Banquet Server position after Blanca Molina, one of the four permanent Banquet Captains, returned from maternity leave. Id. Instead, Molina remained a Banquet Captain after Chartwells terminated another Banquet Captain.

In November 2003, Chartwells created a sixth Banquet Captain position by hiring Raul Castro. Castro had been serving as a Banquet Captain on a temporary basis. According to Joiner, Chartwells' management represented to him that Castro was hired as a Banquet Captain to replace Diva Almeida. Id. at 10. Joiner contends, however, that Almeida never worked as a Banquet Captain. Id.

In Joiner's view, Chartwells' hirings of Molina and Castro as Banquet Captains were racially motivated. During the spring, summer, and fall of 2003, Joiner claims that he consistently made requests for additional work hours. Id. at 11. After each request, Chartwells' management informed Joiner that there were not enough hours to satisfy all Banquet Captains. Id. As Joiner argues, "because all of the employees, all of whom were Caucasian or Hispanic, had been hired by Chartwells before [Joiner's] date of hire, they would have priority in receiving Banquet Captain assignments, to the

9

continued detriment of the Plaintiff." Id. at 10. Joiner then contends that Chartwells' creation of two additional Banquet Captain positions was irrational, considering that there already were not enough hours to satisfy everyone. Id. at 11. From these events, Joiner concludes that Chartwells singled him out for detrimental treatment as compared to "similarly situated employees not within his protected group." Id. at 11; see also, Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000) (discussing the "similarly situated" test).

The court finds that Joiner has not shown himself to be "similarly situated in all material respects" to the individuals with whom he compares himself. Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir.1997). The test for materiality asks whether Joiner and the individuals against whom he compares himself were subjected to the same workplace standards and whether the conduct at issue was of comparable nature. See Graham, 230 F.3d at 40 (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir.1999)).

Joiner's first difficulty in satisfying the materiality test is his admission that he had less seniority than the other Banquet Captains, to the extent that Chartwells hired the Banquet Captains, to whom Joiner was losing work hours, prior to hiring Joiner. See Pl. Mem. in Opp. at 10. Though Joiner disputes Chartwells' interpretation of "seniority," he admits that Chartwells applied seniority, as that term is defined in the CBA, uniformly to all Chartwells' employees.[4] Pl. L.R. 56(a)(2) Stat. at ¶ 79-80. Joiner has put forward no

---

[4]In his Local Rule 56 Statement, Joiner contends that, "[u]nder the CBA, '[w]ithin a certain location or shift, seniority shall also apply within the same job classification if the hours of an employee in that classification are increased or decreased . . . ." Pl. L.R. 56(a)(2) Stat. at ¶ 26 (quoting CBA, Art. 12.5). However, Joiner never expounds on how this provision affects

10

evidence that Chartwells altered its interpretation of seniority at any point during, prior to, or after Joiner's tenure at Chartwells. In addition, there is no evidence that other Banquet Captains successfully requested additional hours. Such evidence might allow an inference that Joiner's inability to obtain additional work was somehow unique. The record is also devoid of competent evidence concerning the amount of work Chartwells actually assigned other Banquet Captains as compared to Joiner.[5]

In essence, Joiner argues that Chartwells uniformly misinterpreted seniority and created two additional Banquet Captain positions in order to target Joiner because of his race. Viewing the record as a whole, to reach such a conclusion would be an exercise in speculation. The court therefore grants summary judgment with respect to Joiner's race discrimination claim.

### B. Joiner's Retaliation Claim

The same *McDonnell Douglas* burden-shifting analysis used for discrimination claims applies to a plaintiff's claim of retaliation. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir.2003). A plaintiff makes a prima facie showing of retaliation by establishing "participation in a protected activity known to the defendant; an employment action disadvantaging the plaintiff; and a causal connection between the protected activity and

---

the resolution of this case.

[5] Besides what has been described above, Joiner's only support for an inference of racial discrimination is Joiner's belief that he was losing work hours to other Banquet Captains with less experience than Joiner as Banquet Captains, that these Banquet Captains were being assigned more hours than Joiner, and that Joiner should have received scheduling priority over these Banquet Captains. See Joiner Aff. at ¶¶ 8, 9, 10, 15, 19. The court finds such conclusory statements cannot create an issue of fact, as they do not constitute "concrete particulars" that would allow a meaningful comparison between Joiner and the Banquet Captains that he references. See Fed. R. Civ. P. Rule 56(e); see also Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997).

the adverse employment action." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir.1995)). Within the context of Title VII claims, a " 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir.2000) (citing 42 U.S.C. § 2000e-3). Once a plaintiff has satisfied her prima facie burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory basis for its action. See Feingold v. New York, 366 F.3d 138, 157 (2d Cir.2004).

Chartwells argues that Joiner's Title VII retaliation claim is defective because too much time elapsed between Joiner's March 10, 2003 CHRO Complaint and Joiner's March 11, 2005 termination to infer any causal link between the two events. Def. Mem. at 25-26; see also Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001) (concluding that a plaintiff can indirectly show causation if there is close temporal proximity between the protected activity and the adverse employment action).

Joiner first responds that, in addition to his March 2005 termination, his reduction in work hours in August and November of 2003 were also adverse employment actions. The apparent thrust of this submission is that some of Joiner's protected activity is causally related to his reduction in work hours; however, Joiner does not specify which protected activities are so related. Next, Joiner contends that Chartwells' continuing course of discriminatory conduct following the March 2003 CHRO complaint -- which course of conduct led Joiner to amend his CHRO complaint in August 2004 -- establishes the causal connection between his CHRO Complaint and ultimate

termination.[6]  Joiner's last contention is that he engaged in additional protected activity by protesting Chartwells' racial discrimination through the CBA grievance process.  The implication appears to be that Joiner's grievances bear a causal connection with his reductions in work hours and ultimate termination.

    1.  Protected Speech

  The court first addresses the issue of whether Joiner engaged in any protected speech.  Joiner claims he made three forms of protected speech under Title VII in protest of Chartwells' alleged racial discrimination:1) the March 2003 CHRO Complaint and August 2003 Amended CHRO Complaint; 2) Joiner's grievances with Chartwells; and 3) Joiner's oral statements to Chartwells' employees.  Chartwells only concedes that Joiner's CHRO complaints constitute protected speech.  The court addresses the protected status of each of these last two forms of speech in turn.

  Concerning Joiner's grievances, Joiner notes that many of the grievances he filed with Chartwells referenced the CBA's "No Discrimination" policy.  Pl. L.R. 56(a)(2) Stat., Disputed Issues at ¶ 46.  That provision prohibits discrimination on the basis of

---

[6]A possible construction of Joiner's argument here is that Chartwells' "continued course of discriminatory conduct" between the March 2003 CHRO complaint and the August 2004 amendment is, in and of itself, an adverse employment action.  See Pl. Mem. at 11-12 (outlining Joiner's retaliation claim).  However, in the three paragraphs that Joiner devotes to his prima facie retaliation claim, he never specifies which actions of Chartwells constitute this supposed continued course of discriminatory conduct, nor does he cite any law to support his claim.  Id., see also, Amended CHRO Complaint, Pl. Ex. 47 (generally stating "I charge [Chartwells] with . . . retaliation for previous opposition to discriminatory conduct . . ."). The court declines to analyze Joiner's claim absent any guidance from him as to what he is actually claiming.  See SEC v. Global Telecom Servs. L.L.C., 325 F.Supp.2d 94, 109 (D.Conn.2004) ("Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")  Therefore, to the extent that Joiner attempts to establish Chartwell's alleged continued course of conduct as an adverse employment action, the court finds this argument to be unsubstantiated.

"race, color, sex, veteran status, national origin, disability, age, religious belief, sexual orientation, Union membership or activity." CBA, Art. 17.1. Joiner did not specify which of these grounds applied on his grievance forms. See, e.g., Joiner Grievance, Nov. 14, 2003 (Pl. Ex. 42A) (referencing CBA, Art. 17.1 without specifying racial discrimination). As Chartwells correctly notes, such general allegations, on their own, would not constitute protected speech. See Thomas v. iStar Financial, Inc., 438 F.Supp.2d 348, 365 (S.D.N.Y. 2006). However, in Grievance Notices sent to Chartwells on November 8, November 9, and December 8, 2003, Joiner clearly indicated his belief that his reduction in work hours was due to racial discrimination. Pl. Exs. 42C, 42D, & 42F. The court finds that these notices are properly considered protected speech. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998).

Concerning Joiner's oral protestations of racial discrimination, Joiner claims that on a number of occasions where he cited the No Discrimination policy in a grievance, he "often verbalized [his] concerns of discrimination to Chartwells' management, including Mr. Taraskewich, Mr. Chenette, Mr. Orr, Mr. DeFiguerdio, and Mr. Breslin."[7] Pl. L.R. 56(a)(2) Stat., Disputed Issues at ¶ 38. Such informal complaints of discrimination may properly be considered protected speech under Title VII. See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir. 1992); see also Thomas, 438 F.Supp.2d at 364.

---

[7]Charwells has moved to strike this portion of paragraph 38 as a bald assertion and legal conclusion (Doc. No. 124). The court denies the motion. Joiner is entirely competent to testify to his recollection of what he told these individuals during the grievance process.

2. <u>Adverse Employment Action</u>

Before turning to Chartwells' causation challenge, it is necessary to clarify which of Chartwells' alleged retaliatory actions is actionable under Title VII. As it did for Joiner's race discrimination claim, Chartwells assumes that Joiner's March 11, 2005 termination is materially adverse. Def. Mem. at 26 n. 7. In Chartwells' view, none of its other employment actions in this case may be considered adverse employment actions. <u>Id.</u> From the parties' submissions, it appears that the other relevant actions in this case are Chartwells' reduction of Joiner's work hours in August and November of 2003, and its two suspensions of Joiner on April 2 and December 5 of 2004.[8] The court finds that there is a genuine issue of fact as to whether these actions were materially adverse.

The Supreme Court has pronounced that an adverse employment action must be "materially adverse", in that it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, --- U.S. ----, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). Material adversity must be the focus in determining whether an adverse employment action has occurred because "it is important to separate significant from trivial harms." <u>Burlington Northern</u>, 126 S.Ct. at 2415. Thus, while the question of whether an employer's actions are materially adverse "will often depend upon the particular circumstances . . . petty slights, minor annoyances, and simple lack of good manners" will normally be insufficient. <u>Id.</u> at ----, 126 S.Ct. at 2415; <u>see also</u> <u>Nugent v. St. Luke's/Roosevelt Hosp.</u>

---

[8]Joiner does not actually argue that his suspensions are materially adverse. However, to the extent that Chartwells contests the viability of these suspensions as adverse employment actions, Def. Mem. at 26 n. 7, the court will address the issue.

Center, 2007 WL 1149979 at * 8 (S.D.N.Y. Apr. 18, 2007).

Based on Burlington Northern and the record in this case, the court finds that there is an issue of fact as to whether Chartwells' suspensions of Joiner[9] and reduction of his work hours could dissuade a reasonable worker from making or supporting a charge of discrimination. Both actions could have a tremendous effect on an employee's livelihood; the effects of which would far outstrip the types of minor reprimands that the Burlington Northern standard intended to preclude.

### 3. Causation

The court next addresses which of the alleged retaliatory actions by Chartwells can reasonably be said to have a causal relationship with Joiner's protected speech. Since there is no direct evidence of causation in the record, determining whether there is a genuine issue of material fact as to causation requires a careful chronology of Joiner's protected speech and the adverse actions he claims to have suffered as a result. As mentioned above, a plaintiff can show a causal connection by demonstrating that his termination occurred soon after the protected activity. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir.1996). In order to prove a causal connection in this manner, the temporal proximity must be "very close." See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing cases holding that gaps between protected activity and adverse employment action as short as three or four months are insufficiently close to prove causation).

---

[9]The court notes that Joiner also received a three verbal and written reprimands following his initial CHRO complaint. Def. L.R. 56(a)(1) Stat. at ¶¶ 49-51. Joiner does not contend, and the court does not find, that these reprimands are materially adverse.

16

The court first considers Joiner's March 10, 2003 CHRO complaint and August 13, 2004 Amended Complaint. The court finds that none of the potential adverse actions in this case share sufficient temporal proximity with either complaint to warrant a reasonable inference of causation. Joiner's reduction of work hours in August and November of 2003 occurred five and eight months after the March 2003 complaint. Joiner's April 2, 2004 suspension came over a year after this complaint, and his December 5, 2004 suspension occurred nearly four months after the August Amended Complaint. Lastly, Joiner's March 2, 2005 suspension pending termination and March 11, 2005 termination came almost seven months after the August amendment. Absent direct evidence of a causal connection, these periods of time are too great for a rational jury to infer a causal connection. See Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85 (2d Cir.1990) (failing to find a causal connection where the time between the protected activity and the adverse employment action was three months); see also Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir.1996) (finding no evidence of a causal connection where the protected action took place between one and three months before plaintiff was discharged). The court therefore grants summary judgment with respect to these claims.

The court now turns to whether there is enough evidence reasonably to infer a causal relationship between Joiner's grievance notices and the alleged adverse employment actions. In his December 8, 2003 grievance notice to Chartwells, Joiner alleges that "[a]fter I filed a grievance on November 9, 2003 regarding unfair labor practice, and racial discrimination as a result of employing a Temporary Captain position . . . you aggressively proceeded with creating a permanent in the same class

17

for a displaced worker . . . ." Pl. Ex. 42F. Chartwells does not dispute that it created an additional Banquet Captain position for Castro during this time period, nor does it dispute that Joiner's work hours declined after this appointment. Considering that Chartwells' creation of another permanent Banquet Captain position would have occurred no longer than one month after Joiner's November 9, 2003 grievance, the court finds that Joiner has come forward with enough evidence to create a material issue of fact as to whether Chartwells reduced his work hours in retaliation for Joiner's November grievance notices. The court therefore denies summary judgment as to this claim.

The court finds that none of the other adverse employment actions in this case shares such a temporal relationship with any of Joiner's grievance notices. Joiner's August 2003 work hour reduction occurred before any of these notices. His earliest suspension occurred four months after the December 8, 2003 notice, and Chartwells terminated Joiner over a year after this last grievance notice. These events are simply too far removed from each other to allow a reasonable inference of causation. The court therefore grants summary judgment with respect to these claims.

Lastly, the court considers whether it can reasonably be said that a causal connection exists between Joiner's verbal protests of discrimination and the adverse employment actions he experienced. The court's analysis is complicated by the fact that Joiner never specifies how often he made these verbal protests or when he made them. See Pl. L.R. 56(a)(2) Stat., Disputed Issues at ¶ 46 ("Plaintiff, on numerous occasions, verbally raised claims of discrimination based on race . . . "); Joiner Declaration at ¶ 38 ("During the grievance process I often verbalized my concerns of

18

discrimination to Chartwells' management . . ."). Given the number of adverse actions relevant to Joiner's retaliation claim and the fact that Joiner filed a total of twenty-nine grievances against Chartwells, Def. L.R. 56(a)(2) Stat. at ¶ 71 (admitted by Joiner), the court will not speculate on any potential causal connection. The court therefore grants summary judgment with respect any retaliation claims based on Joiner's verbal protests of discrimination.

### C. Non-discriminatory Business Reason

Even if this court was mistaken in concluding that Joiner had not made out a prima facie case with respect to those aspects of his discrimination and retaliation claims related to his ultimate termination, the court finds that Joiner has not rebutted Chartwells' non-discriminatory business reason for Joiner's termination. Chartwells asserts that it terminated Joiner based on its finding that Joiner gave away free beer to a Trinity college student while he was working as a bartender. Pl. L.R. 56(a)(1) Stat. at ¶ 54 (admitted by Joiner). At arbitration, a neutral arbitrator upheld Chartwells' decision, finding that Chartwells had "just cause to discipline David Joiner." Id. at ¶ 58 (admitted by Joiner). Though Joiner denies giving away free beer, he admits that Chartwells believed that its stated reasons for firing Joiner were true. See Def. L.R. 56(a)(2) Stat. at ¶ 54. Regardless of whether Joiner disputes the fact that he improperly gave away free beer, his admission prevents him from demonstrating that Chartwells' stated reason for his termination was not Chartwells' actual reason for terminating Joiner. Consequently, Joiner has failed to show that Chartwells' termination of him was pretextual, and, considering the record as a whole, he has also failed to show that his termination by Chartwells was motivated by discriminatory or retaliatory

animus.

## IV. CONCLUSION

For the foregoing reasons, Chartwells' Motion for Summary Judgment (Doc. No. 70) is GRANTED in part and DENIED in part. Chartwells' Motion to Strike (Doc. No. 124) is DENIED as moot, as the court conducted an independent examination of the record in determining the admissibility of evidence.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 3rd day of May, 2007.

                                          /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge